## KNEELAND vs. SMITH and others.

*Where a sale of mortgaged premises for the sum of $7,601 has been properly confirmed, the amount due on the judgment being over $9,000, the sale ought not to be set aside upon a secured agreement to bid $8,600 on a re-sale.*

APPEAL from the Circuit Court for *Rock* County.

This was an action to foreclose a mortgage. A decree of foreclosure was obtained on the 29th of July, 1856. The defendant *Mead*, trustee of the separate estate of the defendant *Ann M. C. Smith*, afterward filed an answer, claiming the mortgaged premises under a sale upon the foreclosure of a certain other mortgage, and denying the priority of the plaintiff's lien. The plaintiff appealed to this court from the order of the circuit court allowing *Mead's* answer to be filed, but subsequently the appeal was dismissed and the answer withdrawn from the files, in consequence of arrangements entered into on the 26th of April, 1860, between the defendant *Mead* and one Cogswell, as follows: Cogswell purchased the plaintiff's judgment, and received a mortgage from the defendant *Ann M. C. Smith* and others, securing the payment of $8000, and entered into agreement with said *Ann M. C. Smith* and said *Mead*, to the effect that Cogswell should advertise a sale of the premises mentioned in said decree, to take place on the 1st of August, 1860; that at said sale Cogswell should bid in the whole of the mortgaged

premises (except a certain lot reserved from sale), at an amount not exceeding that of the decree, with interest and costs to the time of sale ; or in case the whole of said premises could not be obtained for that amount, should bid upon the several parcels (if the premises should be sold in separate parcels and third persons should bid against him on such parcels so sold), that proportion of the whole amount above stated which the value of such parcels respectively bore to that of the whole of the premises, according to the valuation of said premises afterwards set forth in said agreement; that if Cogswell should thus obtain title to said premises, he would, upon the demand of said *Ann M. C. Smith* or said *Mead*, immediately execute a contract to convey the title derived under such sale to such party as the said *Ann M. C. Smith* or the said *Mead* might direct, upon such party's causing to be paid to said Cogswell, or his assigns, the full amount of said mortgage for $8000, and also the full sum to which said decree, with interest at 10 per cent., would amount within five years, &c.; that Cogswell should have the property described in said decree offered in separate parcels, in such manner as said *Ann M. C. Smith* or said *Mead* should direct ; and the value of the several parcels so to be offered separately, for the purpose of determining the amount to be bid upon the same, if any third person should bid against Cogswell upon such separate parcels, was fixed as follows : E. hf. N. E. qr. S. 3, T. 2, R. 12, $600 ; Lots 3 and 4, S. 15, T. 3, R. 12, $1200; undivided hf. of lot 4, S. 36, T. 3, R. 12, $6200; undivided hf. of E. third S. W. qr. S. 35, T. 3, R. 12, $1000. The sale was accordingly advertised to be held on the first of August, 1860 ; but on the 20th of July, on petition of William B. Ogden, the judge of the circuit court made an order requiring the plaintiff to show cause on the 27th of said month, why the court should not direct the undivided half of lot 4, S. 36, T. 3, R. 12, (in which said Ogden had some interest,) to be reserved from sale until after the sale of the remainder of the premises. On the 27th of July, said Ogden and the other parties interested in said sale, agreed that the hearing of said petition should be postponed to the 6th, and the sale to the 9th of

August following.    On the 6th of August, Mahlon D. Og- <span style="float:right">January Term, 1861.</span>
den, who acted as agent for said William B. Ogden, procured
another order from the judge of the circuit court, for a stay    KNEELAND
of the sale until the 11th of September following, which or-    v.
der, however, was not filed or served upon any of the parties    SMITH et al.
to the action.    On the 9th of August, the sale proceeded
without objection on behalf of Wm. B. Ogden, said Mah-
lon D. Ogden, who was present, consenting thereto; and the
undivided hf. of lot 4 in S. 36, T. 3, R. 12, was sold to said
Mahlon D. Ogden for $6201; and the following parcels to
Cogswell, to-wit: the E. hf. N. E. qr, S. 3, T. 2, R. 12, for
$200; the undivided hf. of E. 1-3, S. W. qr., S. 35, T. 3, R.
12, for $200; lot 3 in S. 15, T. 3, R. 12, $500; lot 4 in the
same section at $500.    The defendants *Mead* and *Ann M. C.
Smith* opposed the plaintiff's motion for a confirmation of the
sale, and the defendant *Mead* filed a cross motion to open
the decree and give him leave to refile his answer, and these
motions were severally opposed and supported by the par-
ties upon affidavits, the substance of which is sufficiently in-
dicated in the opinion of this court.    The circuit court, on
the 8th of December, 1860, made an order confirming the
sale; but at the same time made another order providing
that in case the defendants, or either of them, or any one for
them, should, within thirty days, file with the clerk of that
court a valid written agreement of a responsible person (to
be approved by said clerk), binding himself to bid at least
$8,600, in good faith, at a re-sale of the premises, then the
order confirming said sale, and the sale itself, should be set
aside and a re-sale ordered.    From this last order the plain-
tiff appealed.

*H. K. Whiton,* for the appellant.

*Knowlton, Prichard & Jackson,* for the respondent.

*By the Court,* PAINE, J.    We are satisfied from the affi-    April 10
davits presented in this case, that the sale was properly con-
firmed by the court below.    It is clear to our minds that no
trick or deception was intended or practiced by the attorneys.
for the plaintiff in respect to the sale.    The defendants had
long before withdrawn their defense and stipulated that the

sale might take place upon the conditions specified in the stipulation, one of which was that the owner of the mortgage should bid to a certain amount on each tract of land. The attorneys for the plaintiff proceeded in pursuance of the stipulation to advertise the property, and took no steps whatever to inform Ogden of the sale, other than the law required. But Ogden heard of it and obtained an order to stay proceedings. This order was obtained, not only against the wish of the plaintiff, but against that of the defendants, who desired that the sale might take place as advertised and in accordance with the stipulation. They had protected themselves by the terms of that stipulation, which required that the owner of the mortgage should bid up to a fixed amount on each tract or lot. It must be presumed that in fixing these amounts, the defendants adopted such sums as they considered the property ought fairly to bring on such a sale, and that they considered their interests fairly protected if it brought beyond those sums. And the evidence offered as to its value, fully shows that this was so.

This being so, the plaintiff's attorney could not suppose that by removing the obstacle interposed by Ogden, so that the sale might proceed according to the stipulation, he was violating any right or sacrificing any interest of the defendants. He would naturally assume their entire willingness to have it proceed. And we are satisfied that there was no intention on the part of any of the defendants to bid in good faith on any of the lots, a sum greater than that which it was provided the owner of the mortgage should bid, It is, however, obvious that the defendant *Smith* intended to employ some one as a "puffer" or "by-bidder" to run up the tract in which Ogden was interested, without any intention of taking the property, but merely to compel Ogden to bid more than its value, if possible. It is true, that he had announced this intention to the plaintiff's attorneys. But they had given no countenance to it, and stood aloof from all participation in it. Their object was to have the sale take place, intending to abide fully by the stipulation, as they did. They had a right to assume that, in doing so, all the just rights of the defendants would be protected. And,

January Term,
1861

KNEELAND
v.
SMITH et al.

whether the purpose of *Smith*, with respect to defeating the interests of Ogden, would be accomplished or not, they were not bound to inquire, and it is evident they neither went out of their way to hinder or to advance it. And it is certain that, although that purpose failed, that cannot be regarded as a sacrifice of any right or interest of the defendants, and it is very evident from the affidavits, that if they did fail, it was not because *Smith* was prevented from being present at the sale by any surprise, but because the person on whom he relied as his "puffer," declined the service.

With respect to the interest of *Knowlton*, it appears that he was not a party to the suit, but acquired whatever interest he had from one of the defendants, long after the judgment was entered. The general rule is, that the plaintiff is not bound to take notice of an interest so acquired. But if it appeared that such a purchaser had really intended to be present at the sale and to bid, and that the value of the property was such that he might have saved something by doing so, and that by reason of any understanding with the plaintiff's attorney that the sale was to be postponed, he had been prevented from being present, we are not prepared to say that he would not have been entitled to relief. But we think no such state of facts appears here. It is not stated that he intended to bid. It is not shown that the value of the property was such as would have justified him in bidding. It is true, he states that he would have taken steps to protect his interests, but what steps, does not appear. It is more than probable that he was fully acquainted with the situation of the property and with the nature of the stipulation between the parties, when he acquired his interest. And that being so, we think he does not show such a case as justified any separate relief in his behalf. The sale, being fairly made and being a full compliance with the stipulation, was properly confirmed.

And that being so, we do not think it was proper for the court to order that it should be set aside and a re-sale ordered, if the defendants would agree to bid a certain sum beyond the amount for which it was sold, and secure a compliance with the agreement. The property was sold for

$7,601. The order provides that there should be a re-sale upon a second agreement to bid $8,600. The sale having been properly confirmed, this addition to the order would seem to be in effect setting aside the sale for inadequacy of price. Taking into consideration the additional expenses, and the amount of interest accruing on the judgment, we think, even if the additional amount should be obtained, the increase would be too inconsiderable to warrant such an order.

That part of the order which is appealed from, is therefore reversed, with costs.